IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE NEW MEXICO ELKS ASSOCIATION;
FRATERNAL ORDER OF EAGLES,
NEW MEXICO STATE AERIE;
NEW MEXICO LOYAL ORDER OF THE MOOSE,

    Plaintiffs,

v.                                                            Civ. No. 21-0354 KG/LF

MICHELLE LUJAN GRISHAM,
Individually, Acting Under the Color of Law; and
TRACIE C. COLLINS,
Individually, Acting Under the Color of Law,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants Michelle Lujan Grisham (Governor Lujan Grishm) and Tracie C. Collins' (Secretary Collins) (collectively, "Defendants") Motion to Dismiss Plaintiffs' Verified Complaint (Motion). (Doc. 12). The Motion is fully and timely briefed. (Docs. 18, 22). Having considered the briefing and applicable law, and for the reasons stated herein, the Court grants Defendants' Motion to Dismiss and dismisses this case without prejudice.

I.    *Standard of Review*

    A.    *Motion to Dismiss Pursuant to Rule 12(b)(6)*

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion to dismiss, the court does not "weigh potential evidence that the parties might present at trial, but [assesses] whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *VDARE Found. v. City of Colorado Springs*, --

```
```

- F.4th ---, 2021 WL 3716401, at *3 (10th Cir. Aug. 23, 2021) (quoting *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003)).

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility" if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "A plaintiff must allege sufficient facts to 'nudge[] [his] claims . . . across the line from conceivable to plausible.'" *VDARE Found.*, --- F.4th ---, 2021 WL 3716401, at *3 (alterations in original) (quoting *Iqbal*, 556 U.S. at 680).

In conducting the Rule 12(b)(6) analysis, courts "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at *3 (quoting *Iqbal*, 556 U.S. at 679). "When there are well-pleaded factual allegations" remaining, courts "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. While "'[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context,' the court need not accept 'conclusory allegations without supporting factual averments.'" *VDARE Found.*, --- F.4th ---, 2021 WL 3716401, at *3 (alteration in original) (internal citations omitted). "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

A claim brought under Section 1983 requires: "(1) deprivation of a federally protected right by (2) an actor acting under color of state law." *VDARE Found.*, --- F.4th ---, 2021 WL

3716401, at *5 (quoting *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016)). A complaint that fails to adequately allege either element necessarily fails to state a claim upon which relief can be granted.

    B.    *Defense of Qualified Immunity*

Defendants raise the defense of qualified immunity with respect to Plaintiffs' claims brought against them in their individual capacities for money damages. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity serves to balance "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

Qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). To overcome a qualified immunity defense, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, *and* (2) that the right was clearly established at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). Courts may address the prongs in any order. *Id.*

"In order for a constitutional right to be clearly established, the contours of the rights must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1004-05 (internal quotation marks omitted). "A plaintiff may satisfy

3

this standard by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.* at 1005 (internal quotation marks omitted). "To demonstrate that the law is clearly established under the 'weight of authority' approach, a plaintiff must identify more than 'a handful of decisions from courts in other circuits that lend support to his claim.'" *Swanson v. Griffin*, --- Fed. Appx. ---, 2022 WL 570079, at *2 (10th Cir. 2022) (quoting *Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1278 (10th Cir. 2009)); *see also Routt v. Howry*, 835 Fed. Appx. 379, 385 (10th Cir. 2020).

While "the Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality,'" it has also explained that "'officials can still be on notice that their conduct violates established law even in novel factual circumstances.'" *Quinn*, 780 F.3d at 1005 (first quoting *al-Kidd*, 563 U.S. at 742; and then quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). But more recent Supreme Court case law remarks that "the clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Plaintiffs may not identify their claim through "extremely abstract rights" because this would "convert the rule of qualified immunity into a rule of virtually unqualified liability." *Id.* (quoting *Anderson*, 483 U.S. at 639). Ultimately, courts must assess whether "existing precedent [has] placed the statutory or constitutional question beyond debate." *Id.* at 551 (quoting *Mullenix*, 577 U.S. at 12).

II.     *Factual and Procedural Background*[1]

Plaintiffs The New Mexico Elks Association (Elks); Fraternal Order of Eagles, New Mexico State Aerie (Eagles); and Loyal Order of the Moose International (Moose) (collectively, "Plaintiffs") are nonprofit organizations operating several lodges or aeries throughout New Mexico.[2] (Doc. 1) at ¶¶ 1-3. The Elks are a "fraternal organization whose mission is to inculcate the principles of Charity, Justice, Brotherly Love and Fidelity; to recognize a belief in God; . . . to quicken the spirit of American patriotism;" and to run benevolent programs. (*Id.*) at ¶ 11. The Eagles are an "organization uniting fraternally in the spirit of liberty, truth, justice, and equality, to make human life more desirable by lessening its ills and promoting peace, prosperity, gladness and hope." (*Id.*) at ¶ 12. The Moose is "about celebrating life together, serving those in need within [the] local community, supporting . . . children at Mooseheart and standing by . . . senior members at Moosehaven." (*Id.*) at ¶ 13.

Since the onset of the COVID-19 pandemic in March 2020, Plaintiffs have been subject to a series of Public Health Orders (PHOs) enacted by Governor Lujan Grisham and Secretary Collins pursuant to the New Mexico Public Health Act (PHA), N.M.S.A. 1978, § 24-1-1 *et seq.*, the Public Health Emergency Response Act (PHERA), N.M.S.A. 1978, § 12-10A-1 *et seq.*, and the All Hazards Emergency Management Act (AHEMA), N.M.S.A. 1978, § 12-10-1 *et seq.* (*Id.*) at ¶ 10. Plaintiffs were not classified as "essential businesses" in the March 23, 2020 PHO and were required to cease in-person operations beginning on March 24, 2020. (Doc. 1-2) (March 23, 2020 PHO).[3] Plaintiffs contend they were "completely prohibited . . . from operating."

---

[1] All facts cited in this section come from Plaintiffs' Complaint (Doc. 1) and facts of which the Court may take judicial notice.
[2] Defendants do not dispute that Plaintiffs have standing to raise these claims.
[3] The Court takes judicial notice of the March 23, 2020 PHO because it is a matter of public record, is publicly available, and its authenticity is not disputed. *Tal v. Hogan*, 453 F.3d 1244,

(Doc. 1) at ¶ 15. Plaintiffs state that, as of April 16, 2021, the reasons underlying the PHOs "either never materialized or ha[ve] been successfully abated . . . yet Plaintiffs' organizations have been required to remain closed." (*Id.*) at ¶ 17.

Plaintiffs allege that "other organizations that provide similar if not identical activities to Plaintiffs' have been allowed to resume, such as golf courses, country clubs, gyms, and restaurants," but assert that fraternal organizations have not been allowed to reopen. (*Id.*) at ¶ 18. Plaintiffs maintain they "could have and still can implement the same safety precautions, policies and procedures that similar organizations were able to implement in order to resume organizational operations." (*Id.*) at ¶ 19. The PHOs, according to Plaintiffs, "deprived Plaintiffs of the economic benefits and use of their property." (*Id.*) at ¶ 20.

Plaintiffs argue that the Defendants acted arbitrarily and capriciously, and without any rational basis, by allowing some organizations providing certain services to reopen, while prohibiting similar organizations from reopening. Plaintiffs further challenge the business classifications in the PHOs. In addition, Plaintiffs claim that their First Amendment Rights have been "suppress[ed]" by the PHOs by limiting their ability to fundraise. (*Id.*) at ¶ 21.

Plaintiffs assert claims against the Defendants, in their individual capacities[4], for violations of their civil rights, specifically the right to substantive due process, the right to procedural due process, the right to equal protection, and the right to assemble or the right to

---

1265 n.24 (10th Cir. 2006). The March 23, 2020 PHO is also a "document referred to in the complaint and is central to the plaintiff's claim," and is indisputably authentic. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court's consideration of these documents does not convert the motion to dismiss into a motion for summary judgment. *Tal*, 453 F.3d at 1265 n.24.

[4] The parties agree that Defendants' actions with respect to the PHOs were taken while acting "under color of law" and within the scope of their discretionary authority.

expressive association.[5] Plaintiffs also seek a declaration that "issuance and enforcement of the [PHOs] that require businesses to remain closed is unconstitutional . . . , and that the actions of the Defendants are unlawful and unconstitutional," and "that the rights of the Plaintiffs and the citizens of New Mexico have been violated by the various actions of the Defendants and the said Defendants are enjoined from engaging in such violations and declaring them to be null and void ab initio;" and a permanent injunction "to prohibit Defendants from enforcing the [PHOs] in the arbitrary and capricious manner and fashion engaged by Defendants that keeps organizations like Plaintiffs closed and unable to even open under similar conditions and restrictions as other organizations." (Doc. 1) at 8-9. All claims are brought pursuant to 42 U.S.C. § 1983.

The Court previously denied Plaintiffs' requests for a Temporary Restraining Order and a Preliminary Injunction on the basis that Plaintiffs' sued Defendants only in their individual capacities, precluding injunctive relief. (Doc. 17) at 2-3 (citing *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011), and *Grove v. Groome*, 817 Fed. Appx. 551, 555 (10th Cir. 2020)).

III.   *The PHOs*

For the sake of brevity, the Court attaches Court's Exhibit 1 to discuss the various changes to PHOs.

IV.   *Analysis*

The Court need not decide whether a constitutional violation occurred because Defendants have asserted qualified immunity and Plaintiffs failed to establish that any alleged

---

[5] While the Elks assert part of their mission is "to recognize a belief in God," they do not bring a claim under the Free Exercise Clause. (Doc. 1) at ¶ 11. The Court will not inject an interest not asserted by the Plaintiff.

7

right was clearly established at the time the PHOs were enacted. *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015).

As further explained herein, Defendants are entitled to qualified immunity, their Motion is granted, and Plaintiffs' Complaint is dismissed with prejudice.

A. *Mootness*

As an initial matter Defendants assert in their Reply that "the challenged restrictions will be rescinded beginning July 1, 2021—rendering this action moot." (Doc. 22) at 1-2. The Court agrees with respect to Plaintiffs' claims for injunctive and declaratory relief. However, Plaintiffs' claims pursuant to 42 U.S.C. § 1983 seek money damages for an alleged injury already incurred. Therefore, mootness does not apply to the § 1983 claims.

"Federal courts only have jurisdiction to consider live, concrete cases or controversies." *Ajaj v. Federal Bureau of Prisons*, --- F.4th ---, No. 19-1250, at 10 (10th Cir. Feb. 9, 2022) (quoting *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012)). The defendant bears the burden of proving mootness. *Id.* at 11 (citing *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000)). The mootness doctrine "focuses upon whether a definite controversy exists throughout the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action." *Id.* at 10 (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011)).

A claim may become moot if "(i) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979). "A case is not moot when there is *some* possible remedy, even a partial remedy

8

or one not requested by the plaintiff." *Ajaj*, --- F.4th ---, No. 19-1250, at 10 (emphasis in original) (quoting *Rezaq*, 677 F.3d at 1010). Put another way, the Supreme Court recognizes "exceptions" to the general rule against consideration of moot cases, as where a Plaintiffs' status is "capable of repetition yet evading review." *S. Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911); *Lucero v. Bur. of Collection Recovery, Inc.*, 639 F.3d 1239, 1243 (10th Cir. 2011). Similarly, courts apply an exception where a defendant has ceased the challenged action but it is likely the defendant will "return to his old ways," often referred to as the voluntary cessation exception. *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *Lucero*, 639 F.3d at 1243.

The COVID-19 pandemic remains ongoing. New Mexico remains under various PHOs. The current restrictions relate to masking in hospitals and health care settings, require businesses and non-profits to report COVID cases to the New Mexico Environment Department, and require businesses and non-profits to "adhere to the pertinent COVID-Safe Practices." *See* February 17, 2022 Public Health Emergency Order Clarifying that Current Guidance Documents, Advisories, and Emergency Public Health Orders Remain in Effect; and Amending Prior Public Health Emergency Orders to Impose Certain Public Health Measures, available at https://cv.nmhealth.org/wp-content/uploads/2022/02/020422-PHO-Masks.pdf/, last accessed Mar. 14, 2022.

However, statements from Defendants and the clear trajectory of the public response to the pandemic renders it unlikely the challenged restrictions will be reimposed.

Therefore, Plaintiffs' claims for injunctive and declaratory relief are moot and are dismissed without prejudice on that basis.

Even if the claims for injunctive and declaratory relief were not moot, Plaintiffs failed to state a claim upon which relief can be granted because they failed to sue either Defendant in her official capacity. *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) ("Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief."). Accordingly, even if these claims remained viable, they would be subject to dismissal for failure to state a claim.

B. *Qualified Immunity*

Plaintiffs have provided no precedent[6], and the Court has found none, to suggest that Defendants violated any clearly established right by enacting the PHOs – including those which imposed temporary restrictions on the sale of alcohol and/or the playing of bingo – in an effort "to address th[e] extraordinary health emergency" created by the COVID-19 pandemic. *South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (denying application to enjoin enforcement of California order that, to limit spread of COVID-19, placed temporary numerical restrictions on public gatherings). Indeed, the Supreme Court has expressly held that "the precise question of when restrictions on particular social activities should be lifted during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement," and that where, as here, "local officials are actively shaping their response to changing facts on the ground," "[t]he notion that it is 'indisputably clear' that the Government's limitations are unconstitutional seems quite improbable." *Id.* at 1614.

Further, far from placing "beyond debate" any established right to be free from temporary, pandemic-related restrictions, controlling Supreme Court precedent instead instructs that: the "Constitution principally entrusts the safety and health of the people to the politically

---

[6] Plaintiffs cite dissents to recent Supreme Court cases, but no controlling majority opinions.

accountable officials of the States to guard and protect"; when "those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad"; and, unless those broad limits are "exceeded," "they should not be subject to second-guessing by an unelected federal judiciary." *Id.* at 1613-14 (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905); *Marshall v. United States*, 414 U.S. 417 (1974); *Garcia v. San Antonio MTA*, 469 U.S. 528 (1985)). In addition to the state statutes cited in each PHO[7], Defendants' authority to enact policies, like the PHOs, in the face of an emergency is derived from the state's "police power." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991) ("The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals . . . .").

Thus, while there is no established precedent to suggest that Defendants' limitations were unconstitutional, there *is* established precedent to demonstrate that, in enacting the PHOs, Defendants acted within the limits of their Constitutionally entrusted duty to guard and protect the safety and health of the people of New Mexico. *See Bojicic v. DeWine*, __ F. Supp. 3d __, No. 21-cv-630, 2021 WL 4977018, at *15 (N.D. Ohio Oct. 27, 2021) (noting that when the Director of the Ohio Department of Health issued orders closing non-essential businesses, "*Jacobson* endorsed the constitutionality of her having done so"). Given this binding Supreme Court precedent, "it is simply irrational to assert that a reasonable health official would have known that imposing business closings in response to a pandemic clearly violated Supreme Court precedent." *Id.*

---

[7] Defendants cite the Public Health Act, NMS 1978, §§ 24-1-1 to -40, the Public Health Emergency Response Act, NMSA 1978, §§ 12-10A-1 to -10, the Department of Health Act, NMSA 1978, §§ 9-7-1 to -18, and the All Hazard Emergency Management Act, NMSA 1978, §§ 24-1-1 *et seq.* as vesting them with authority to act.

Indeed, "courts around the country have addressed qualified immunity for government officials at the 12(b)(6) stage regarding COVID-19 measures and found government officials to be immune from suit in their personal capacities." *Pleasant View Baptist Church v. Beshear*, No. 20-cv-166, 2021 WL 4496386, at *8 (E.D. Kty. Sept. 30, 2021) ("After examining the applicable precedent, particularly in light of a global pandemic, Pleasant View cannot demonstrate that Governor Beshear's issuance of [an executive order temporarily halting in person learning] violated a clearly established constitutional right, and qualified immunity will be granted on that basis."). *See, e.g., Bojicic*, 2021 WL 4977018, at *15 (dismissing all monetary claims against all defendants on basis of qualified immunity, and explaining that "[t]he numerous decisions upholding such orders clearly demonstrate that a reasonable person in the Health Director's position would not have 'known' that enacting the orders at issue here would violate the law"); *Benner v. Wolf*, No. 20-cv-775, 2021 WL 4123973, at *5 (M.D. Pa. Sept. 9, 2021) (dismissing plaintiffs' federal damages claims on the basis of qualified immunity and explaining that, "[w]hen Defendants imposed the challenged COVID-19 restrictions, no Supreme Court precedent, Third Circuit precedent, or robust consensus or persuasive authority had held that similar restrictions violated clearly established law"); *Northland Baptist Church of St. Paul, Minn. v. Walz*, __ F. Supp. 3d __, 2021 WL 1195821, at *8 (D. Minn. Mar. 30, 2021) (finding that it was "not clear that Governor Walz had fair warning that the [executive orders limiting the number of people allowed in buildings] violated Plaintiffs' rights, if they in fact do so," and, accordingly, dismissing claims against Governor Walz in his individual capacity on basis of qualified immunity); *Case v. Ivey*, __ F. Supp. 3d __, 2021 WL 2210589, at *25-26 (M.D. Ala. June 1, 2021) (granting qualified immunity to Governor Ivey in motion to dismiss context following litigation challenging her proclamation of a national emergency and subsequent orders

intended to combat COVID-19); *Hartman v. Acton*, 499 F. Supp. 3d 523, 538 (S.D. Ohio 2020) (granting qualified immunity to Ohio Department of Health director in motion to dismiss context following issuance of stay at home order in response to COVID-19 pandemic).

Consistent with these decisions, the Court finds that "existing precedent did not clearly establish Plaintiffs' rights at the time of the alleged violations so as to put [Defendants'] conduct [in issuing the PHOs] beyond debate." *Northland Baptist Church*, 2021 WL 1195821, at *8.

Accordingly, Defendants are entitled to qualified immunity on Plaintiffs' claims against them in their individual capacity. For this reason, Plaintiffs' claims against Defendants are dismissed with prejudice.

V.   *Order to Show Cause*

As discussed in Court's Exhibit 1, attached hereto, Andrew Vallejos, Director of the Alcoholic Beverage Control Division within the New Mexico Regulation and Licensing Department, sent a letter on March 4, 2021, to entities holding "club" liquor licenses pursuant to NMSA 1978, § 60-3A-3(E) (2019). *See* Letter from Andrew Vallejos, Dir., Alcoholic Beverage Control, to Club Licensees (Mar. 4, 2021), http://rld.state.nm.us/uploads/files/Alcohol%20and%20Gaming/Letter%20to%20Clubs%20reope ning.pdf ("March 4 Letter"). The March 4 Letter clarified that, as of the February 24 PHO, "clubs"[8] fell under the "catch-all" definition for gaming operations and under the "bars and clubs" provision for alcohol service." *Id.* at 1. This means that, at the very latest, Plaintiffs' businesses were allowed to reopen on March 4, 2021.

---

[8] The New Mexico Liquor Control Act defines a "club" as, among other requirements, a nonprofit group organized under the laws of New Mexico and "operated solely for recreation, social, patriotic, political, benevolent or athletic purposes." NMSA 1978, § 60-3A-3(E).

13

The Court notes that Plaintiffs did not address the March 4 Letter in their *Verified* Complaint or in their Response. In fact, Plaintiffs expressly represented in their Complaint that "[p]ursuant to the public health orders the Plaintiffs have not been able to operate their organizations since the March 23, 2020 order." (Doc. 1) at ¶ 16. Plaintiffs made this representation in the Complaint despite that the Complaint was filed on April 16, 2021, nearly six weeks *after* the March 4 Letter. Furthermore, in their Response, Plaintiffs doubled-down on this misrepresentation by stating that "[r]estaurants and bars have been allowed to reopen, but Plaintiffs have been unable to reopen their organizations to all of their sponsored events such as bingo." (Doc. 18) at 6. The Response, filed May 28, 2021, again affirmatively states to the Court that Plaintiffs' businesses remained closed and they were "unable to open."

These statements are contradicted by the public record and the record in this case, specifically, that Plaintiffs were allowed to open subject to minimal restrictions, depending on which county the business was in.

Federal Rule of Civil Procedure 11(b) provides that when an attorney signs, files, submits, or advocates to the court "a pleading, written motion, or other paper," the attorney "certifies that to the best of [their] knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*: . . . (3) the factual contentions have evidentiary support[.]" (emphasis added). Here, Plaintiffs submitted a *verified* Complaint, meaning that the Plaintiffs or their counsel have sworn to the allegations.

Plaintiffs' counsel knew, or should have known through a reasonable investigation, that the situation with respect to non-profit clubs like Plaintiffs' materially changed on March 4, 2021. Yet Plaintiffs' counsel persisted in the misrepresentations. Moreover, counsel doubled-down on the misrepresentation in his Response.

The Court issues this Order to Show Cause *sua sponte* pursuant to Federal Rule of Civil Procedure 11(c)(3). By way of fair warning, the Court is considering imposing a monetary sanction on Plaintiffs' counsel, Mr. A. Blair Dunn, personally, in the event the Court concludes he violated Rule 11(b). The Court notes that other sanctions, such as awarding Defendants' attorney fees or dismissing this action, would be inappropriate in this case because a) Defendants did not request attorney fees and b) the Court has already dismissed this action on other grounds.

Therefore, Plaintiffs' counsel, Mr. A. Blair Dunn, shall show cause in writing why his conduct did not violate Rule 11(b). Counsel will file his response with the Court, but may limit access to the filing to the Applicable Party and Court Participants. Counsel's written response will be filed no later than seven (7) calendar days after entry of this Order.

VI.  *Conclusion*

For the reasons explained herein, Plaintiffs' failed to state a claim upon which relief can be granted and Defendants are entitled to qualified immunity.

IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' claims for a permanent injunction and for declaratory relief are dismissed without prejudice as moot and, alternatively, for failure to state a claim upon which relief can be granted;
2. Defendants are entitled to qualified immunity on Plaintiffs' individual-capacity claims;
3. Plaintiffs' individual-capacity claims are dismissed with prejudice;
4. Plaintiffs' counsel will show cause, in writing, within seven (7) days from the date of entry of this Order why his conduct did not violate Rule 11(b); and

5. This case will be dismissed when the Court resolves the Order to Show Cause.

_____
UNITED STATES DISTRICT JUDGE