IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THE NEW MEXICO ELKS ASSOCIATION;
FRATERNAL ORDER OF EAGLES,
NEW MEXICO STATE AERIE;
NEW MEXICO LOYAL ORDER OF THE MOOSE,

Plaintiffs,

v. Civ. No. 21-0354 KG/LF

MICHELLE LUJAN GRISHAM,
Individually, Acting Under the Color of Law; and
TRACIE C. COLLINS,
Individually, Acting Under the Color of Law,

Defendants.

ORDER QUASHING ORDER TO SHOW CAUSE

Lawyers in New Mexico are bound by the New Mexico Rules of Professional Conduct, Rule 11 of the Federal Rules of Civil Procedure, and courts' "inherent powers that are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). When a lawyer exceeds the permissible bounds of zealous advocacy, the Court has no choice but to sanction the unacceptable conduct. Having considered the circumstances, the purposes behind the applicable rules, and the lawyer's pattern of practice, the Court quashes the Order to Show Cause issued to that Plaintiff's counsel, attorney A. Blair Dunn. Under the present circumstances, the Court does not find that Mr. Dunn violated Rule 11.

I. *Standards of Attorney Conduct*

In New Mexico, it is professional misconduct for a lawyer to, among other things:

A. violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so or do so through the acts of another;

> . . .
> C. engage in conduct involving dishonesty, fraud, deceit or misrepresentation; [or]
> D. engage in conduct that is prejudicial to the administration of justice
> . . .

NMRA 16-804. "A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation." *Id.* at 2019 committee commentary, n.2.

The Rules of Professional Conduct incorporated into Rule 16-804 include, among others, the following limitations on attorney conduct:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . .

NMRA 16-301. The Committee Commentary provides that an "action is frivolous . . . if the lawyer is unable either to make a good faith argument on the merits of the action taken or to support the action taken by a good faith argument for an extension, modification or reversal of existing law." NMRA 16-301, Committee Commentary n.2.

Additionally,

> A. A lawyer shall not knowingly:
> (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
> (3) offer evidence that the lawyer knows to be false; if a lawyer, the lawyer's client or a witness called by the lawyer has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal; a lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.
>
> . . .

> C. The duties stated in Paragraph[] A . . . continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 16-106 of the Rules of Professional Conduct.
>
> . . .

NMRA 16-303. "Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities." *Id.*, Committee Commentary n.4.

The Rules of Professional Competence further mandate minimal competence, to wit: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." NMRA 16-101.

> In determining whether a lawyer employs the requisite knowledge and skill in a particular matter, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience, the lawyer's training and experience in the field in question, the preparation and study the lawyer is able to give the matter, and whether it is feasible to refer the matter to, or associate or consult with, a lawyer of established competence in the field in question. In many instances, the required proficiency is that of a general practitioner. Expertise in a particular field of law may be required in some circumstances.

*Id.*, Committee Commentary n.1. "Competent handling of a particular matter includes inquiry into and analysis of the factual and legal elements of the problem, and use of methods and procedures meeting the standards of competent practitioners. It also includes adequate preparation." *Id.*, Committee Commentary n.6.

Lawyers practicing in civil cases in federal court are also bound by Federal Rule of Civil Procedure 11. Specifically:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

II. *Authority for Sanctions*

Rule 11(c) provides that the court may issue a *sua sponte* order to show cause why an attorney should not be sanctioned for making false representations to the court. The court must notify the attorney of the conduct at issue and provide the attorney with an opportunity to be heard and to respond to the allegations. *White v. GM Corp.*, 908 F.2d 675, 686 (10th Cir. 1990). If the court chooses to sanction an attorney under Rule 11, the sanction "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The sanction may include non-monetary directives or order the attorney to pay a penalty to the court. *Id.* The obligations imposed by Rule 11 are ongoing and "are not measured solely as of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have merit." *See* Fed. R. Civ. P. 11, advisory committee's note (1993).

A court also has the inherent authority to sanction bad faith conduct in litigation. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 766-67 (1980); *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) ("To deter

frivolous and abusive litigation and promote justice and judicial efficiency, the federal courts are empowered to impose monetary sanctions, by statutes and the rules of civil and appellate procedure as well as their inherent right to manage their own proceedings."). This authority is ever present, and a court may sanction bad faith conduct through its inherent authority, even when that conduct could also be sanctioned by the Federal Rules of Civil Procedure or a statute. *Chambers*, 501 U.S. at 50.

III. *Analysis*

Two principal questions confront the Court in this case: first, whether Mr. Dunn's conduct violated Rule 11 or violated any of the other standards discussed above; second, if Mr. Dunn's conduct did run afoul of professional standards, what sanction, if any, is appropriate. *See generally Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988) (discussing process for Rule 11 sanctions). In making its determination, the Court notes that the instant conduct is not the most serious or severe violation of Rule 11 or the New Mexico Rules of Professional Conduct that the Court has seen. Indeed, it is not even the most serious or severe violation of Rule 11 for which Mr. Dunn has been held responsible in this District. *See Collins v. Daniels*, 1:17-CV-00776-RJ, 2018 WL 1671599 (D.N.M. Jan. 4, 2018) (granting motion for Rule 11 sanctions), affirmed by 916 F.3d 1302 (10th Cir. 2019) (affirming $14,868.00 sanction against Mr. Dunn).

"The standard by which courts evaluate the conduct of litigation is objective reasonableness—whether a reasonable attorney admitted to practice before the district court would file such a document." *Adamson*, 855 F.2d at 672. Accordingly, "[i]f, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law, then such conduct is sanctionable under rule 11." *Id.* (citation omitted). The language of Rule 11 "stresses the need for some prefiling

inquiry into both the facts and the law to satisfy the affirmative duty imposed by the Rule." Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment). In determining whether the signer's conduct is reasonable, "the court is expected to avoid using the wisdom of hindsight" and inquire only as to "what was reasonable to believe at the time the pleading, motion, or other paper was submitted." *Id.*

In determining whether or when to issues sanctions, the Advisory Committee provided the following insight:

> The rule does not attempt to enumerate the factors a court should consider in deciding whether to impose a sanction or what sanctions would be appropriate in the circumstances; but, for emphasis, it does specifically note that a sanction may be nonmonetary as well as monetary. Whether the improper conduct was willful, or negligent; whether it was part of a patter of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it has on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants: all of these may in a particular case be proper considerations. The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct of the offending person or comparable conduct by similarly situated persons.

Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendments) (committee commentary to subdivisions (b) and (c)).

The Court is aware that Mr. Dunn has a significant history of receiving orders to show cause, orders for sanctions, and orders finding him to have litigated in bad faith (though without necessarily using those words). *See, e.g.*, *Dale v. Equine Sports Med. & Surg. Race Horse Service, PLLC*, NO. 4:15-CV-825-A, 2017 WL 1498030, at *2 (N.D. Tex. Apr. 25, 2017) (detailing Mr. Dunn's various excuses about why he and his clients could not attend various trial dates and his outright refusal to comply with court orders); *Dale v. Equine Sports Med. & Surg.*

*Race Horse Service, PLLC*, No. 1:18-cv-967-WJ-JHR, 2019 WL 5268631, at *8 (D.N.M. Oct. 17, 2019) (finding Plaintiffs—represented by Mr. Dunn—engaged "in conduct before the Texas district court that was considerably short of good faith"); *Dale v. Equine Sports Med. & Surg. Race Horse Service, PLLC*, 836 F. Appx. 657 (10th Cir. 2020) (noting district court's finding regarding Plaintiffs' conduct falling "considerably short of good faith" and finding no reason to disagree); *Dunn v. Dunn*, Case No. D-202-DM-2011-00839, Oct. 15, 2020 Order at ¶ 13 (noting Mr. Dunn "strongly urged the adoption" of emergency recommendations in custody case, but failed to comply with those recommendations); *Dunn v. Dunn*, A-1-CA-36859 (N.M. Ct. App. July 31, 2018) (affirming award of attorney's fees against Mr. Dunn and noting that he "frustrated the process through his frequent filing of motions and his conduct in general"); *Del Curto v. Deschamps*, D-202-CV-2016-07856, Nov. 3, 2020 Order Denying Plaintiff's Motion to Reconsider Dismissal and Request for Expedited Hearing (noting Plaintiff, represented by Mr. Dunn, simultaneously argued that a court-imposed scheduling order did and did not exist); *Collins v. Daniels*, 1:17-CV-00776-RJ, 2018 WL 1671599 (D.N.M. Jan. 4, 2018) (granting motion for Rule 11 sanctions), affirmed by 916 F.3d 1302 (10th Cir. 2019) (affirming $14,868.00 sanction against Mr. Dunn). However, in this case, the Court cannot find that no competent attorney could have proceeded as Mr. Dunn did. Therefore, the Court finds Mr. Dunn did not violate Rule 11.

In making this finding, the Court notes that an attorney must conduct a reasonable pre-filing investigation and may not rely on their client for legal conclusions. Here, Mr. Dunn asserts he relied on his clients for the factual assertion that their businesses remained closed during the Public Health Emergency. This is certainly reasonable. However, Mr. Dunn took the *unreasonable* of step of relying on his clients for the legal conclusion that their businesses

remained closed by operation of the Public Health Orders. A lawyer may not rely on a client for a conclusion of law. The lawyer must exercise his or her independent legal judgment when drawing legal conclusions.

While the Court remains concerned about Mr. Dunn's representation that he relied on his clients for legal conclusions, the Court accepts that the factual and legal situation developed rapidly and a minimally competent attorney could have, reasonably, misunderstood the legal landscape that applied to his clients. To be clear, this Order quashing the Order to Show Cause does not condone Mr. Dunn's apparent blasé attitude nor his general recalcitrance.

## IV. *Conclusion*

While the Court does not condone Mr. Dunn's conduct, it nonetheless finds no violation and hereby quashes the Order to Show Cause.

IT IS SO ORDERED.

UNITED STATES DISTRICT JUDGE